John Robinson, Appellee, v. Mary Robinson, Appellant.

Negotiable instruments: ACTION UPON NOTE: CONSIDERATION: INSTRUCTION. In this action a divorced husband is seeking to recover on a renewal note given by his wife for a balance claimed to be due in consideration of a relinquishment of his claim to property in her name, and for refraining from contesting the divorce. *Held,* an instruction that if defendant obtained a divorce it is presumed that it was lawfully granted on sufficient evidence, and that plaintiff's promise not to resist the action for divorce constituted no part of the consideration for the note, and that neither partial payment on the note in suit nor the fact that it was a renewal would impart or establish a consideration therefor, was proper.

Same: RENEWAL NOTE: CONSIDERATION. Where a promissory note is treated by the parties either as valid or as questionable, and for the purpose of securing an extension of time to avoid liti-

gation and settle the rights and obligations of the parties a new note is given, such renewal note is supported by a valid consideration. Under the evidence it is held that the question of whether defendant gave the note in suit to avoid litigation and to settle the supposed or claimed rights of the parties was for the jury.

*Appeal from Hamilton District Court.*—Hon. R. M. Wright, Judge.

Saturday, March 12, 1910.

Action at law upon a promissory note made and executed to plaintiff, by him indorsed to Robert Fullerton, and by Fullerton reindorsed without recourse to plaintiff. Defendant admitted the execution of the note, but pleaded want of consideration therefor. She also pleaded that plaintiff did not own the note and was not the real party in interest. On the issues joined the case was tried to a jury, resulting in a verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Wesley Martin,* for appellant.

*G. F. Tucker* and *D. C. Chase,* for appellee.

Deemer, C. J.—Plaintiff and defendant were at one time husband and wife. They were divorced some time in the year 1906, and just prior to the divorce defendant gave plaintiff two notes for $1,000 each. At that time some farm land was in the defendant's name, and she claims that she gave plaintiff the notes on his promise to join in deeds to the farm land, so that she might handle the same. Thereafter, in settlement of these two notes, defendant paid plaintiff $200 in cash, and executed the note in suit for the remainder. On cross-examination of this witness it appeared that one reason for the giving of the original notes was to

secure plaintiff's promise not to contest the divorce suit, which it appears he did not do. The negotiations leading up to the execution of the notes were conducted by a son, and he testified on the witness stand as follows:

Reside upon a homestead in Edinburg, N. D. I am the son of Mr. and Mrs. Robinson. I was living with my mother in this city at the time the notes for $2,000 were given. My father was at Marshalltown in the Soldiers' Home. I went down to visit him. We wanted to get the farm so we could transfer it, and he said that he had something coming, and, if he didn't get something more out of it, he would see that my mother didn't get much out of it. He told me that. This was previous to the divorce proceedings. He threatened to oppose that—I don't know on what ground—and make her lose most of the property. . . . I think my mother knew what my errand to Marshalltown was. We talked this matter over a great many times. I told her what I was going for, and, after I got back, I told her what the result was. I think my father agreed to come to Webster City and make a settlement for $2,000. He agreed at that time not to appear against her on condition that she would give him $2,000. A buyer was not found until after the divorce was granted. My errand down there was to get him not to appear against my mother on condition that he was to receive $2,000 out of it. At the time of the giving of the two $1,000 notes, the farm down there and the house and lot here in town stood in my mother's name. Q. So that, when the divorce proceeding was granted, all he got out of his interest in that property was two notes of $1,000 each. That is right, isn't it? (Defendant objects as immaterial, and assuming something that the witness did not understand. He had no interest in the property, and the testimony is incompetent, immaterial and irrelevant. Overruled, and defendant excepts.) A. Yes, sir. I got one of the notes. My mother since paid me a part of it. I surrendered it to her. I surrendered it possibly the same day I got it. She gave me $500. I didn't consider that she was indebted to me. I surrendered the note before I got the $500. I didn't get it all at one time. . . . My father insisted when I went down to Marshalltown to see him that he should have something out of the property, or

else he would appear against her and contest the divorce proceeding.

This is all the testimony offered by the defendant upon the issues tendered. Plaintiff testified, in substance, that the original notes were given in settlement and adjustment of his property rights in the divorce proceedings, and that the note in suit was given in settlement of his claims on the original notes.

On the issues and the testimony, the trial court gave the following, among other instructions:

(6) If you find from a preponderance of the evidence that the sole consideration for the original $1,000 note was the promise of the plaintiff not to resist the granting of the divorce which defendant was seeking to obtain from him, you are instructed that such consideration was what is termed an incompetent consideration, which in law is no consideration at all.

(7) If you find from a preponderance of the evidence that defendant obtained a divorce from the plaintiff, it will be presumed that the same was obtained on adequate and sufficient evidence, and that she was in law entitled to a divorce, and that the plaintiff's promise, if any he made, that he would not resist the defendant's application for a divorce, was of no value, and could not form a consideration for the making of the $1,000 note executed by the defendant to plaintiff.

(8) If you find from a preponderance of the evidence that the two $1,000 notes were given without consideration, the mere fact, if it be a fact, that the note sued on was given as a renewal of one of the $1,000 notes, would not by that fact alone impart a consideration to the note sued on in this case, and in such case your verdict should be in favor of the defendant.

(9) You are further instructed that the mere fact, if it be a fact, that the defendant paid $200 on the $1,000 note, would not alone in and of itself prove that the note in suit was supported by any valid consideration.

(10½) If you find from a preponderance of the evidence that at the time the $200 were paid on the $1,000

note the validity of the $1,000 note was in the minds of the parties either as a valid claim, or it was a question in their minds whether or not it was a valid claim, and in order to get an extension of time to avoid litigation, and in order to settle the supposed or claimed rights of the parties in the $1,000 note, the defendant executed and delivered the note in suit, then in such case you would be warranted in finding that the note sued on is supported by a valid consideration.

These instructions are complained of, and it is also insisted that under the undisputed testimony there should have been a verdict for defendant. Aside from instruction No. 10½, the charge is even more favorable to defendant than she was entitled to, and there is no just cause for complaint on this score. Instruction No. 10½ is undoubtedly correct as an abstract proposition. *Rowe v. Barnes,* 101 Iowa, 302; *French v. French,* 84 Iowa, 659; *Adams v. Adams,* 70 Iowa, 253; *Brannum v. O'Connor,* 77 Iowa, 632; *Harlan v. Harlan,* 102 Iowa, 701. There was ample testimony to take the case to a jury upon this proposition. Mr. Robinson testified on the trial, and it was not denied, that the first arrangement was that he, Robinson, was to have a provision for $2,000 inserted in the decree as alimony, if the court would carry out the division along that line in case of divorce; but, on the suggestion of Mr. Martin to avoid certain unjust claims, he was advised to accept the notes in lieu of this alimony, and he did so. The first note was paid, and, when the second became due or soon thereafter, plaintiff, who was in straightened circumstances, and needed the money, procured the good offices of an old friend of the family, Mr. Robert Fullerton, who interviewed Mrs. Robinson as to the payment of the note, and suggested to her that her husband would enforce collection. She then paid $200 on the note, and gave another note for the balance and accrued interest, and this latter note is the note sued on in the present action. Mr. Fullerton testi-

fied: "Mrs. Robinson stated to him that she was hard up, and that, if Mr. Robinson would give her time, she would pay $200 if Mr. Robinson would give her time on the balance. She asked for time; said she would not be able to pay this until she disposed of her place. 'I did what I could to get Mr. Robinson to give her time. She finally paid $200, and I took a note on the time she asked for the balance. It was satisfactory to her. I was a mutual friend. I never had any interest in the matter, only to keep peace in the family.' "

Surely this was sufficient to justify the instruction and the verdict. The judgment must be, and it is, *affirmed.*